Brady, J.
The object of the defendants the railroad company is to avail themselves of the compromise agreement against all the certificate holders, whether assenting or non-assenting to that compact. They are, however, lessees who took a lease from the trustees, and, being unable to meet their pecuniary obligations thereunder, were relieved to the extent formally expressed in the agreement mentioned, and to that extent only. Whatever may have been the power the managers possessed on that subject, they did not exercise it directly, but applied to the certificate holders, who hada pecuniary interest in the rental secured by the lease, and asked their assent to the contemplated change of the liability of the railroad company under that instrument, and, having secured a large majority assenting, in virtue thereof, and not from any inherent powers, made the compromise formulated by the agreement referred to. Ho ingenuity of counsel, no invocation of subtle device, can overcome this fact. That paper expressly states that it is made on behalf of such holders of certificates issued by the parties of the first part, as trustees or their predecessors in the trust, as have already authorized, or should thereafter authorize, the same, and had caused, or should cause, such authorization to be indorsed upon the respective certificates held by them, and thus contracted for them, and such as should subsequently come in and assent to the arrangement. The defendant railroad company was advised, therefore, at the outset, of this feature of the compromise, and that all the parties in interest, namely, the certificate holders, had not acquiesced, and could have refused to accept the partial compact had they seen fit to adopt that course. The agreement by the *920 trustees clearly bound the assenting holders of the certificates, and the railroad company, as lessees, were benefited to that extent, and the agreement, though limited as to such holders, was an advantage to themselves by payment to them under it and according to its terms. It makes no difference whether the original compact or organization created a copartnership or not, inasmuch as the railroad company, by accepting a lease, assumed new responsibilities and relations to the Car Trust of New York No. 2, duly expressed in writing, and that relation has continued, however changed or modified the terms of the lease. They are designated as “lessees,” and the cars and locomotives are hired and let and leased to them by that instrument. The trustees did not, as already suggested, modify the terms of that paper by any exercise of authority derived from any source other than from the assenting certificate holders, whose assent had been obtained as proved upon the trial. Whatthey did was necessary as trustees to give form to the assent to this compromise, and to secure to the said railroad company the benefits to accrue from such assent. Various technical and refined theories and subtle suggestions of varied relations created by the different papers have been invoked, which tend rather to obscure than to enlighten us upon the real subject of the controversy, and great ingenuity and zeal have been thus displayed by the learned counsel for the said railroad company in the array, but, however devoted and laudable professionally, it can be of no avail. The obligations of their client the railroad company are too plainly set down to be attenuated by abstruse and specious argument. The common-sense view of the situation must predominate, and declare their liabilities under the lease to which reference has been made. Indeed, it may be said that Judge Van Brunt, in the opinion he delivered upon considering the propriety of the demurrer interposed herein, has covered the. whole subject. It should be remarked here, in passing, that it is now urged that the plaintiffs have not the legal capacity to sue. This objection is on a ground not taken by demurrer, and waived, therefore; but, if it were otherwise, the point is not well taken, for the reason that the claim urged is under a lease between the trustees and the railroad company, and whatever rental remains unpaid may be collected by the former under the covenants in the lease contained. The modification of that instrument operated as a reduction of the rent pro tanto, and the assent of the certificate holders was in effect a receipt or legal discharge of so much of it exceeding the reduction as they would be entitled to if the whole were paid. The construction adopted by the special term of the agreements brought to view for the reasons given was correct, and the judgment pronounced should not be disturbed. The exception to the exclusion of evidence which was designed to show what was intended by the compromise agreement is of no value. There is no such ambiguity in that paper as would warrant such a procedure, and the effect of such evidence, if admitted and effectuated, would be to enlarge the sphere of the written paper in favor of the railroad company, and to diminish the rights of the non-assenters. Familiar rules require courts to reject such evidence, under such circumstances.
It is perhaps unnecessary to continue this opinion beyond what has been already said, but some observations may be indulged in, in reference to some of the positions taken on behalf of the appellant. It is said, for example, that it is not necessary that all the members of an association shall personally join in performing an act, in order to make it legal and binding upon them all. They may delegate authority to others to bind them by acting as agents on their behalf, and this principle seems to be invoked for the purpose of sustaining the proposition that, a majority of the certificate holders having assented to the compromise agreement, it is binding upon the whole. The answer to this proposition, assuming it to be correct, is that by the terms of the organization the entire management of its affairs is vested in a board of management, whose determinations were to be executed by the trustees named in the *921 articles of association, in whom the legal title to this property was vested, and they determined in the management of its affairs to seek the assent of the certificate holders, and to carry out their views, as far as expressed, in reference to the subject-matter to which the assent related. The same view is taken of the protest of some of the assenting certificate holders against the propriety of bringing and continuing this action. If such a procedure were given any force, it would be in effect interfering with the management of the business, and might arrest the entire business of the association, at least for a time. It is also suggested that it is the duty of the court, if it can legally do so, to construe the agreement particularly under consideration as binding upon all the certificate holders. The difficulty of carrying out- this view is that the agreement of compromise was not made for, and not intended to be binding upon, all the holders,—a construction already said to have been properly adopted, not only by the special term, hut by the learned judge who presided when the demurrer to which reference has been made was argued, and by him determined. The duty suggested, it is quite apparent, therefore, cannot be legally performed. The judgment should be affirmed, with costs. All concur.