---

(125 App. Div. 730.)

## In re MILLS et al.

(Supreme Court, Appellate Division, First Department. May 8, 1908.)

1. CORPORATIONS—STOCK—PLEDGES—RIGHTS OF PURCHASER.

The right of one who in good faith has purchased stock from a bailee or has acquired the right to hold the stock as security for a loan, is one which accrues to the pledgee by estoppel, and in no way depends on the actual title of the thing pledged or the authority of the party pledging it, being derived from the act of the real owner which precludes him from disputing as against the pledgee, the existence of the title, or power.

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—PROPERTY IN HANDS OF ASSIGNEE —CLAIMS OF THIRD PERSONS.

A stockbroking firm holding stock deposited with it for safe-keeping only, and also other stock deposited as margin for trading accounts or stocks purchased on margin, pledged all the stock to a bank to secure a loan, and subsequently assigned for the benefit of creditors. The bank sold sufficient of the collateral to pay its claim, including the stock held for safe-keeping, and returned to the assignee the remaining collateral, including the stock deposited as margin with the firm by parties who before the assignment had tendered the amount due from them and demanded the stock. *Held*, that since it would have been the duty of the bank, had it been advised of the facts, to have sold the other stocks before selling the stock deposited for safe-keeping with the firm, the stock returned to the assignee should be sold, and the proceeds first applied to the claim of the owner of the stock so deposited for safe-keeping.

Appeal from Special Term.

Application by Edward Harding, as assignee of Frederic Mills and others individually and as copartners under the firm name of Mills Bros. & Co., for an order directing the assignee to sell certain securities and distribute the proceeds. From the order made, certain creditors appeal. Order modified, and, as modified, affirmed.

For former report, see 57 Misc. Rep. 315, 107 N. Y. Supp. 1057.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Willard U. Taylor, for appellant Beach.

Theodore F. Humphrey, for appellant Townsend

Herbert Noble, for appellant Henck.

McLAUGHLIN, J.   Some time prior to the 22d of August, 1907, the appellant Beach left with the firm of Mills Bros. & Co. for safe-keeping certain certificates of stock, indorsed in blank, among which was a certificate for 300 shares of the common stock of the United States Steel Company. On the day named Mills Bros. & Co. made a general assignment for the benefit of creditors. There was then outstanding against the firm a loan payable to the Colonial Bank of New York, which, with interest, amounted to $35,004.86, and, as collateral security for its payment, the firm had pledged certain securities of the aggregate market value on that day of $42,965.72. Among these securities was the certificate for 300 shares of stock belonging to the appellant Beach; certain securities of the appellant Henck, part of which had been bought on margin by Mills Bros. & Co. and held by them as security for the unpaid balance of their purchase price, and a part of which had been delivered to them by him to secure the unpaid balance of the purchase price of other stocks bought for him on margin, also certain securities of the appellant Townsend which had been bought by the firm on margin and held as security for the unpaid balance of the purchase price, and also securities of other margin creditors. Shortly before the assignment the appellants Henck and Townsend tendered to Mills Bros. & Co. payment of the amounts owed by them, respectively, to the firm, and demanded the return of the securities so held as collateral. The securities were not returned, and after the assignment the Colonial Bank, without notice of the claims of Beach, Henck, or Townsend, sold sufficient thereof to pay the indebtedness, and after the sale it had in its possession a balance of $560.86, derived therefrom, in addition to certain securities which it had not been necessary for it to sell to satisfy the loan. The bank sold all of the securities which belonged to the appellant Beach and a part of those belonging to the appellants Henck and Townsend and other margin creditors. After the sale it turned over to the assignee the moneys derived therefrom, in excess of what was necessary to pay the loan, and the securities which it had been unnecessary to sell. The appellant Beach thereupon demanded that the assignee sell the securities which the bank had not sold, and that the entire proceeds derived from the sale, including the cash turned over by the bank to the assignee, be delivered to her. The assignee there-

upon applied to the court for an order directing such sale and payment. The appellants Henck and Townsend opposed the motion, and demanded that the assignee return to them their respective securities so held by him. The motion resulted in an order, from which Beach, Henck, and Townsend each appeals, directing the assignee to sell the securities remaining in his hands and to divide the proceeds derived therefrom, together with the cash delivered by the bank to the assignee ($560.86) among the three appellants in proportion to their respective claims—Beach, 80.25 per cent.; Henck, 15.37 per cent.; and Townsend, 4.38 per cent.

I am of the opinion that the appellant Beach is entitled to the entire proceeds, or so much thereof as may be necessary to make good her loss in the sale of her stock. She does not stand, either legally or equitably, in the same position as the appellants Henck and Townsend. She had simply deposited her certificate of stock with Mills Bros. & Co. for safe-keeping. She owed them no money, and had never had any other dealings with them, and their use of this stock was a larceny. No title to it, as against her, could be acquired by any one except a person who had in good faith purchased the stock or loaned money upon it, relying upon the apparent title that she had conferred upon the insolvent firm. The ground upon which the right of a person who, in good faith, has purchased stock from a bailee, or has acquired the right to hold the stock as security for a loan, is based is stated in McNeil v. Tenth National Bank, 46 N. Y. 525, 7 Am. Rep. 341. It is a right which accrues to the pledgee by estoppel. It in no way depends upon the actual title of the thing pledged or the authority of the party pledging it, but is derived from the act of the real owner which precludes him from disputing, as against the pledgee, the existence of the title or power, "which," says Judge Rapallo in the case cited, "through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance." But, as to every one except the pledgee who has actually in good faith advanced money upon the apparent title conferred by the owner of the securities upon his bailee or agent, the owner is entitled to the stock. Mrs. Beach was not a customer of the assigned firm. She owed them nothing, and they had no more right to pledge her stock as security for the loan than they would have had to have taken money out of her pocket against her will. It was a larceny of the stock, and nothing else.

The appellants Henck and Townsend occupy an entirely different position. All of their securities were deposited as margin for trading accounts or stocks purchased on margin, and in either case the firm had the right to hold them as collateral security for the payment of the loan. They gave the firm, and, through the firm, the bank, the right to sell their securities if any indebtedness existed between them and the firm remained unpaid. The delivery of their securities to the Colonial Bank transferred to the bank the right to hold the securities for the repayment of the amount due, but it had no right to deliver the securities belonging to Mrs. Beach to the bank, or to use them in any way. Therefore, when the Colonial Bank made the sale, had Mrs. Beach been advised of it, she would have had a right to insist

that all of the securities which had been rightfully delivered to the bank be sold to pay the loan before her securities were resorted to, and, if a sufficient fund had been derived from the sale of the other securities to pay the loan, the bank could not have sold her securities and would have had to deliver them to her. In other words, it would have been the duty of the bank, had it been advised of the facts, to have sold the securities of the appellants Henck and Townsend before selling hers. This is what ought to have been done, and, inasmuch as a court of equity will consider that done which should have been done, it will now direct that the stocks of Henck and Townsend be sold and the proceeds turned over to her, in so far as it may be necessary to make good to her the loss which she sustained by the unauthorized sale of the 300 shares of the steel stock.

The question presented, in principle, cannot be distinguished from the one presented in Tompkins v. Morton Trust Company, 91 App. Div. 274, 86 N. Y. Supp. 520, affirmed on opinion below, 181 N. Y. 578, 74 N. E. 1126. But it is urged that, when Henck and Townsend offered to pay the amount remaining due upon their accounts and demanded the securities, they immediately, except as against the bank, became entitled to them. I do not think this follows. In a technical sense these securities belonged to them, and Mills Bros. & Co. had only a right as bailee to hold them as security for the payment of the balance due. There existed, however, in consequence of the implied contract between them and the firm certain rights which the firm had by which their title was qualified. This right is commented upon in Tompkins v. Morton Trust Co., supra, Mr. Justice Ingraham saying:

"Thus a customer is not entitled to the identical shares purchased by the broker for his account. The broker also has the right to hypothecate the shares to raise money to carry out his contract of purchase which he has made on behalf of the customer, and thus an hypothecation of the stock by a broker to procure the money necessary to carry out his contract with his customer by which he agreed to purchase and carry the stock is not a conversion of the stock."

It may be assumed as between Henck, Townsend, and the firm that there was a conversion when the latter failed to deliver the stock, but this I do not think changed the legal rights which then existed as to the appellants Beach, Henck, and Townsend. Mrs. Beach, as already said, had up to that time the right to insist that all of the securities which had been rightfully pledged with the bank should be sold before resorting to her stock, which had been wrongfully pledged. Henck and Townsend could not by anything which they did without notice to her diminish the rights which she theretofore had. The firm had up to this time the right to the possession of their securities. This right they had transferred to the bank. When the firm failed to deliver their securities, they could undoubtedly have maintained an action against it for conversion, but such an action would have been an election that the title to the stock had vested absolutely in the firm; they being entitled simply to the value of them, less the amount due on account of the advances made. Mrs. Beach was entitled to the possession of her stock without any condition whatever, except in so

far as the bank alone had obtained, by way of estoppel, some right to hold it as security for the loan made to the firm. She had, as we have already seen, the right to insist that the bank should sell the other securities which had been rightfully pledged with it before re-sorting to hers, and the fact that the bank did not do this does not, I think, change the legal rights of the parties.

The order appealed- from, therefore, must be modified by directing that the cash paid to the assignee by the bank, and so much of the pro-ceeds to be derived from the sale of the securities as may be neces-sary to make good her loss in the sale of the steel stock be paid to her, and, as thus modified, it should be affirmed, with $10 costs and disbursements against the appellants Henck and Townsend, to be divided between them equally. All concur.