MAYBELLE D. GOUERT, Appellant, *v.* THE MECHANICS AND METALS NATIONAL BANK OF THE CITY OF NEW YORK and Others, Respondents.

First Department, February 9, 1917.

Bailment — unauthorized hypothecation of stocks by insolvent stock-brokers — when bailee must first resort to stocks legally hypothecated — judgment in other action, when not binding upon person not made party.

Where stockbrokers, who subsequently made a general assignment for the benefit of creditors, hypothecated stocks belonging to the plaintiff which they had no legal right to hypothecate, so that they were in fact

guilty of conversion, and in the same transaction also hypothecated stocks belonging to another customer which they had a legal right to hypothecate, the plaintiff may require the bank with whom the securities were hypothecated first to satisfy its claims out of the stocks of the other customer which were legally pledged.

And where the plaintiff's stocks have all been sold by the bank she is entitled to a judgment that the remaining securities held by it be sold to satisfy the remaining claims, and the balance, if any, be paid over to the plaintiff before any part thereof be paid to the other customer of the insolvent brokers.

A judgment obtained against the bank by the other customer, to which the plaintiff was not a party, is in no wise conclusive upon her and determined no rights as between her and the plaintiff in that action.

APPEAL by the plaintiff, Maybelle D. Gouert, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 17th day of June, 1916, dismissing the complaint upon the decision of the court after a trial at the New York Special Term.

*Louis J. Vorhaus,* for the appellant.

*William P. Fisher,* for the respondents.

SCOTT, J.:

Although there are a number of defendants in this action the only controversy is between two individuals who owned stocks and bonds which were in the hands of the stock brokerage firm of Stoppani & Hotchkin, and which were hypothecated by that firm with the defendant bank to secure advances. The firm failed and the bank foreclosed its lien upon the pledged securities. The plaintiff, not questioning as between herself and the bank the right of the latter to resort to her securities, as well as to those of the defendant Fisher, to pay the indebtedness of the brokerage firm, contends for reasons to be presently stated that, as between herself and the defendant Fisher, she is entitled to a judgment that the proceeds of the sale of Fisher's securities be first applied to the payment of the bank's claim, and that whatever balance may remain after satisfying the bank's claim in full shall be paid to her in preference to Fisher. Upon this question the bank stands

indifferent between the parties, being concerned only to see that its claim is paid out of the proceeds of the pledged securities.

Briefly stated, the facts as disclosed upon the trial are as follows: The firm of Stoppani & Hotchkin (hereafter called the firm) engaged in the stock brokerage business, had an account in the Mechanics and Metals National Bank of the City of New York (hereafter called the bank), and from time to time borrowed money from the bank. On February 15, 1910, it executed and delivered to the bank what is described as a general collateral loan agreement providing for the deposit of securities with the bank from time to time to cover any amount due on loans made by the bank. The agreement contemplated that all securities so deposited, so long as they were held by the bank, should constitute collateral security for any and all indebtedness of said firm to the bank. The defendant William P. Fisher was a customer of the firm, and had for a long time carried a speculative account with it. It carried for him, upon margin, certain stocks, or at least he believed that it so carried them, and from time to time he responded to calls for further margin by paying to the firm certain amounts in cash, and depositing certain securities. With respect to the securities thus deposited as additional margin, as well as with respect to the stocks carried for him, he agreed in writing that the same might be pledged " either separately or together, with other securities, either for the sum due thereon to said Stoppani and Hotchkin or for any greater sum." The said securities were accordingly pledged by said firm with the bank under the general collateral loan agreement heretofore mentioned. On February 24, 1914, plaintiff was the owner of six bonds of the United States Steel Corporation and four bonds of the city of New York all together being of the approximate value of $10,000. On that date she loaned said bonds to the firm of Stoppani & Hotchkin upon the agreement of said firm to safely keep said bonds and to return them to her upon demand. She was not indebted to said firm in any way, and gave no consent to the sale or hypothecation of her said bonds. Nevertheless the said firm immediately pledged said bonds with the bank under the col-

lateral loan agreement above described. In so doing the firm was undoubtedly guilty of a wrongful conversion, but plaintiff concedes that as between herself and the bank the latter obtained good title as pledgee under the rule of *McNeil* v. *Tenth Nat. Bank* (46 N. Y. 325) and kindred cases.

On May 18, 1914, the firm failed and made a general assignment for the benefit of creditors. On that date it owed the bank about $49,500, as security for which the bank held under the general collateral loan agreement the ten bonds above referred to belonging to plaintiff, as well as certain other securities belonging to defendant Fisher. All of the securities thus pledged, except the stock hereinafter referred to, but including plaintiff's bonds, were sold by the bank under the loan agreement and the proceeds applied to the reduction of the loan to Stoppani & Hotchkin, which was thus reduced to about $6,000, as security for which the bank held, and apparently still holds, 200 shares of stock belonging to defendant Fisher. In July, 1914, Fisher began an action against the bank and others, but not against the present plaintiff, seeking to recover the securities which had been delivered by him to Stoppani & Hotchkin as margins, and by that firm pledged with the bank, his ground being that, as he alleged, the firm had induced him to deposit the securities by false and fraudulent representations. In this he was wholly unsuccessful, the court finding that his allegations of fraud were not sustained, but the judgment, as entered, permitted him to receive from the bank the securities yet unsold, upon paying the amount still due to the bank with interest.

The position of the case, then, stands thus: Stoppani & Hotchkin had in their hands securities belonging to the plaintiff which they had no legal right to hypothecate. They had also in their hands securities belonging to defendant Fisher which they had the legal right to hypothecate. They commingled the two classes of securities and hypothecated them all for their general indebtedness to the bank. Under these circumstances it is well settled that plaintiff has a right to demand that recourse be first had to Fisher's securities for the payment of the second debt, and that her securities shall be resorted to only after Fisher's securities have been applied, and where, as in

this case, plaintiff's securities have already been sold, she is entitled to a judgment that the remaining securities held by the bank be sold to satisfy the debt still due, and the balance, if any, remaining after the debt has been fully paid, be paid over to her up to the value of her bonds, before any part thereof is paid to Fisher. (*Tompkins* v. *Morton Trust Co.*, 91 App. Div. 274; affd., 181 N. Y. 578; *Matter of Mills*, 125 App. Div. 730; affd., 193 N. Y. 626; 1 Dos. P. Stockb. [2d ed.] 282.)

The learned court at Special Term dismissed the complaint, as appears from the opinion (95 Misc. Rep. 374), because it considered that the judgment in the suit of Fisher against the bank in some way concluded the plaintiff. This was clearly an erroneous view. Plaintiff was not a party to that action, and can in no way be bound by the judgment therein. As to her, it is *res inter alios acta.* Nor is it, for the same reason, conclusive as against Fisher as between him and the plaintiff, and if, upon the new trial, he can show, as he sought to do, but was not permitted, that for any reason his pledged stock stands upon the same footing as that of the plaintiff, he is entitled, as between them, to do so by appropriate proof. The judgment in the former action conclusively determined all questions between Fisher and the bank, but it determined no question between Fisher and this plaintiff. What may be the effect of such facts as Fisher may be able to establish upon a new trial we cannot now determine. The judgment appealed from must, therefore, be reversed and a new trial granted, with costs to abide the event.

LAUGHLIN, DOWLING, SMITH and DAVIS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event. Order to be settled on notice.